IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

DARRELL SMITH                                                              PLAINTIFF

V.                                    NO.  4:09-cv-00767 JWC

MICHAEL J. ASTRUE,
Commissioner, Social
Security Administration                                                   DEFENDANT

MEMORANDUM OPINION AND ORDER

        Plaintiff, Darrell Smith, seeks judicial review of the denial of his claim for

supplemental security income (SSI) benefits.  Both parties have submitted briefs (doc. 16,

18, 19).  For the reasons that follow, the Court[1] **affirms** the Commissioner's decision that

Plaintiff is not disabled within the meaning of the Social Security Act and regulations and,

therefore, is not entitled to SSI benefits.


I.

        The Commissioner's denial of benefits must be upheld upon judicial review if the

decision is supported by substantial evidence in the record as a whole.  42 U.S.C. §§

405(g), 1383(c)(3); *Moore v. Astrue*, 623 F.3d 599, 602 (8th Cir. 2010).  Substantial

evidence is "relevant evidence which a reasonable mind would accept as adequate to

support the Commissioner's conclusion."  *Moore*, 623 F.3d at 602.  In its review, the Court

should consider evidence supporting the Commissioner's decision as well as evidence

fairly detracting from it.  *Id.*  Nevertheless, if it is possible to draw two inconsistent

---

[1]The parties have consented to the jurisdiction of the United States Magistrate Judge
(doc. 17).

conclusions from the evidence and one of these conclusions represents the Commissioner's findings, the denial of benefits must be affirmed.  *Id.*

## II.

At the time of the hearing before the ALJ, Plaintiff was forty-four years old.  (Tr. 112, 229.)  He obtained his GED in 2005, and has past work as a laborer in the construction industry and as a tree trimmer.  (Tr. 72, 75, 77, 98, 112.)  On September 29, 2007, he fell from a ladder while trimming trees.  (Tr. 112, 231-32.)  This resulted in a burst fracture of the L1 disc.  On October 2, 2007, Dr. Thomas Glenn Pait, a neurosurgeon, performed an open reduction and internal fixation from T12 to L2.  Plaintiff was discharged three days later, with pain medication and instructions to lift no more than ten pounds.  (Tr. 138-39.)

He filed his application for SSI benefits on October 18, 2007, alleging disability due to a "broken back."  (Tr. 57, 71-72.)  In October and November 2007, he received follow-up treatment from Dr. Pait and from a family physician, Dr. Wesley C. Thomas.  (Tr. 128-37, 207-08.)

At his last visit to Dr. Pait, on January 31, 2008, Plaintiff said he had returned to work doing carpentry and "helping duties," and was doing well, but continued to experience a constant dull pain that became a sharp pain when standing.  Dr. Pait reported that Plaintiff was "stable" and had normal tone and muscle mass, normal strength, grossly intact sensory, "excellent" toe-heel walk, and no evidence of ataxia (lack of coordination), weakness or spasticity.  Dr. Pait cautioned him about engaging in "arduous" activities and advised him to avoid heavy lifting, but said "helping out" and lifting approximately a half-gallon or gallon of milk was "acceptable."  (Tr. 123-27.)

On January 3, 2008, Dr. Jim Takach, a state agency medical consultant, completed a physical RFC assessment form, rating Plaintiff's exertional, postural, manipulative and other limitations in various areas. (Tr. 31, 184-94.) He concluded that, after Plaintiff completed his "progressive rehab," he could be expected to function within the limits of light exertional activity. (Tr. 191.) His assessment was based on a review of Plaintiff's existing medical records. Dr. Jerry L. Thomas reviewed the same evidence on reconsideration, plus Dr. Pait's January 31 report, and affirmed the assessment. (Tr. 30, 39, 191, 194.)

The next evidence of medical treatment was on July 9, 2008, when Plaintiff was seen by Dr. H. Kevin Beavers, a family physician at the same clinic as Dr. Wesley Thomas. Dr. Beavers noted Plaintiff's report that he had "ongoing back pain" and was "certainly unable to do any lifting, pulling, bending." Dr. Beavers also observed that Plaintiff had "very limited range of motion primarily in the back with antalgic gait." (Tr. 206-07.)

On July 21, 2008, Dr. Ted Honghiran with Orthopaedic Clinic & Sports Medicine examined Plaintiff as a consulting physician at the request of the Social Security Administration. (Tr. 196-98.) He noted that Plaintiff appeared to be in "stable condition" since his back surgery but still had pain, muscle spasms and restricted range of motion in the lumbar area. (Tr. 196-97.) He documented Plaintiff's lumbar flexion at 45 degrees (normal 90), extension at 0 degrees (normal 25) and right and left lateral flexion at 10 degrees (normal 25). (Tr. 198.) However, Dr. Honghiran observed that Plaintiff's neurological exam was "still intact" and he had no loss of muscle function. (Tr. 197.) He stated, "[H]e still has a lot of pain and at this time I do not think he is able to return to work of any kind. This will most likely last 12 months." (Tr. 197.)

Dr. Honghiran also prepared a Medical Source Statement of Ability to Do Work-Related Activities (Physical) (MSS).  (Tr. 199-204.)  He expressed his opinion that Plaintiff: had the ability to occasionally lift/carry up to fifty pounds and frequently lift/carry up to ten pounds; could sit for up to four hours in an eight-hour workday and stand/walk for up to two hours; could walk up to one-fourth of a block; could frequently reach, handle, finger and feel, but only occasionally push/pull; could frequently operate foot controls; could never climb stairs, ramps, ladders or scaffolds, but could occasionally balance, stoop, kneel, crouch and crawl; could occasionally work with moving mechanical parts or operate a motor vehicle; could perform activities like shopping; could ambulate without any assistive devices; could climb a few steps at a reasonable pace with the use of a hand rail; could prepare simple meals and care for his personal hygiene; and could sort, handle and use papers and files.

On January 12, 2009, Plaintiff presented himself to the hospital emergency room with back pain after doing yard work.  (Tr. 217-223, 237.)

III.

Under the applicable law, a claimant is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The regulations provide a five-step sequential process to determine whether a claimant is disabled.  *See* 20 C.F.R. § 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  Basically, those procedures require the ALJ to take

4

into account whether a claimant is working, whether the claimant's physical or mental impairments are severe, whether the impairments meet or equal an impairment listed in the regulations, whether the impairments prevent a resumption of work done in the past, and whether they preclude any other type of work. *Id.*

Here, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since filing his application for benefits.  The ALJ next determined, at step two, that Plaintiff suffered from severe impairments of a burst fracture of the lumbar spine and osteoarthritis, but that none of his impairments, individually or in combination, equaled a step-three listed impairment as contained in the regulations.  At step four, the ALJ found that Plaintiff had no past relevant work, but retained the residual functional capacity (RFC) to perform sedentary work.  At step five, after consulting the Medical-Vocational Guidelines, taking testimony from a vocational expert, and considering Plaintiff's age (younger individual), education, work experience and RFC, the ALJ found that Plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy.  *See* 20 C.F.R. § 416.969; 20 C.F.R. pt. 404, subpt. P, app. 2, Rule 201.27.  The ALJ thus concluded that Plaintiff was not disabled.  (Tr. 13-20.)  Plaintiff pursued administrative review with no success, making the ALJ's decision the final decision of the Commissioner.  (Tr. 3-12.)

Plaintiff argues that: (1) the RFC formulated by the ALJ is not supported by substantial evidence because the ALJ failed to properly weigh the medical opinions and improperly discounted Plaintiff's subjective allegations of pain; (2) the ALJ's step-three determination that Plaintiff did not have a listing-level impairment is not supported by

5

substantial evidence; and (3) the testimony of the vocational expert was improper as it was based on a hypothetical question that did not include all of Plaintiff's impairments.

IV.

RFC is defined as "the most [the claimant] can still do" in a work setting "on a regular and continuing basis" despite his limitations.  20 C.F.R. § 416.945(a)(1), (b) & (c). The ALJ bears the primary responsibility for assessing a claimant's RFC at step four of the sequential evaluation, based on all relevant evidence, including medical records, opinions and observations of treating sources and others, and the claimant's own descriptions of his limitations. *Id.* §§ 416.927(e)(2), 416.945(a)(3); *see Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010).

As stated, the ALJ found that Plaintiff retained the RFC to function at the sedentary level, specifically: lifting/carrying ten pounds occasionally and less than ten pounds frequently, sitting for six hours, standing/walking for up to two hours, and occasionally climbing, balancing, crawling, kneeling, crouching and stooping.  (Tr. 15.)  *See* 20 C.F.R. § 416.967(a); SSR 96-9p, 1996 WL 374185, at *6 (July 2, 1996).

A.    Medical Opinions.

Plaintiff first asserts that the ALJ failed to properly weigh the medical opinions in accordance with 20 C.F.R. § 416.927(d) and SSR 96-2p, and should have given controlling weight to the opinions of his examining physicians and thus granted his request for disability benefits.

In deciding whether a claimant is disabled, the ALJ is required to consider every medical opinion received from physicians and other medical sources, must resolve conflicts

among the various opinions, and may reject any conclusions that are inconsistent with the record as a whole. 20 C.F.R. § 416.927(d); *Heino v. Astrue*, 578 F.3d 873, 879 (8th Cir. 2009). Section 416.927(d) lists the following factors to consider in weighing medical opinions: (1) whether the source has examined the claimant; (2) the length, nature, and extent of the treatment relationship; (3) the extent to which the relevant evidence, "particularly medical signs and laboratory findings," supports the opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is related to the source's area of specialty; (6) and other factors "which tend to support or contradict the opinion."

A treating physician's opinion is given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010). The ALJ can properly discount a treating physician's opinion if it is inconsistent with the physician's own clinical treatment notes, or is inconsistent with and unsupported by the medical evidence as a whole. *Id.* at 930. *See* SSR 96-2p, 1996 WL 374188, at *2 (July 2, 1996) (giving controlling weight to treating source medical opinions).

In his decision, the ALJ stated that he had considered all opinion evidence in accordance with the requirements of § 416.927 and the applicable rulings, including SSR 96-2p. (Tr. 16.)

1.  Dr. Wesley Thomas; Dr. Kevin Beavers.

Plaintiff argues that the ALJ improperly discounted the medical opinions of treating physician Dr. Wesley Thomas and "ignored" the opinion of treating physician Dr. Kevin Beavers.

The ALJ's decision noted Plaintiff's family physician's statement, on July 9, 2008, that Plaintiff could not engage in any lifting, pulling, and bending. (Tr. 17, 207.) The ALJ attributed this statement to Dr. Thomas; however, a review of the clinic's treatment records shows that, on this particular date, Plaintiff was examined by Dr. Beavers at the same clinic. (Tr. 206-07 [indicating that Dr. Beavers' exam notes for 07/09/08 begin at the bottom of page 207 and continue at the top of page 206].) The ALJ stated that he was discounting this opinion "for the most part" as inconsistent with the record as a whole and that, to the extent it was consistent with other evidence, he took the statement into account by assessing an RFC of sedentary work. (Tr. 18.)

The ALJ pointed out several inconsistencies in the record which provided valid reasons for declining to give controlling weight to this opinion that Plaintiff was unable to lift, pull or bend. He noted that, twelve days after Dr. Beavers' statement, Dr. Honghiran (an orthopedic specialist) stated his opinion that Plaintiff could lift and carry as much as fifty pounds occasionally. (Tr. 17, 18, 199.) The ALJ also noted that the neurosurgeon, Dr. Pait, expressed his opinion shortly after surgery that Plaintiff could perform work duties so long as he avoided "heavy lifting, bending, and pulling activities" and lifting more than a half-gallon or gallon of milk. (Tr. 16-17, 126, 130-31.) Dr. Honghiran found that Plaintiff could occasionally push/pull. (Tr. 201.) The ALJ also noted that the assessment of an inability to bend was "not quite consistent" with Dr. Honghiran's findings, which showed restricted range of lumbar motion but not complete inability to bend. (Tr. 18, 198.) The ALJ also stated that Dr. Beavers' statements were undermined by Plaintiff's testimony that he was doing yard work in January 2009 and took care of his wife who was bedridden, as well as his statements to Dr. Pait in the weeks after surgery about performing work activities.

8

(Tr. 18.)   Additionally, the clinic's treatment notes reflect that Plaintiff has been treated by the medical personnel at the clinic on only four occasions since his alleged onset date in September 2007, and on only two of those occasions by Dr. Beavers.  (Tr. 206-13.)  The ALJ thus had an adequate basis under § 416.927(d) and other authority for discounting Dr. Beavers' opinion.

       2.    Dr. Pait.

The ALJ stated that he was giving the "greatest weight" to Dr. Pait's opinions.  (Tr. 18.)  Plaintiff argues that some of Dr. Pait's medical records are contrary to – rather than supportive of – the ALJ's assessment that Plaintiff has the RFC to function at the sedentary exertional level.  He points to Dr. Pait's advice to avoid lifting, his continued prescription of pain medication, and Plaintiff's report to Dr. Pait of back pain after lifting barrels at work in November 2007.   However, as detailed above and noted by the ALJ, Dr. Pait's post-operative records do contain significant evidence supporting the RFC determination, *i.e.,* his observations shortly after surgery that Plaintiff's condition was stable and he was doing well and that it was "acceptable" for him to perform work activities other than "arduous" labor or "heavy" lifting. (Tr. 126.)  The fact that Plaintiff can point to some contradictory evidence in the record does not lead to a conclusion that the ALJ's RFC finding is not supported by substantial evidence.  *See Van Vickle v. Astrue*, 539 F.3d 825, 829 (8th Cir. 2008).

       3.    Dr. Honghiran.

Plaintiff argues that the ALJ improperly discounted Dr. Honghiran's opinion that he was unable to work, as well as his specific findings regarding exertional limitations, and should have granted controlling weight to his assessments.

The ultimate conclusion of whether a claimant is able to sustain gainful employment is a question reserved for the Commissioner. *Brown v. Astrue*, 611 F.3d 941, 952 (8th Cir. 2010); *see* 20 C.F.R. § 416.927(e)(1).   The ALJ thus was correct to discount Dr. Honghiran's opinion that Plaintiff could not return to work of any kind.  (Tr. 17.)

Moreover, Dr. Honghiran was a one-time consulting physician, rather than a treating source whose opinions may be entitled to controlling weight under the regulations and SSR 96-2p. *See* SSR 96-2p, *supra* at *2 (controlling weight rule applies only to opinions from "treating sources" as defined in the regulations); 20 C.F.R. § 416.902 (treating source means "your own physician" who has or has had "an ongoing treatment relationship with you").   The ALJ is entitled to discount the opinion, in whole or in part, of a one-time examining physician, particularly where it is inconsistent with the physician's other findings and observations, or with other evidence in the record.  *See Tindell v. Barnhart*, 444 F.3d 1002, 1004-06 (8th Cir. 2006); *Vandenboom v. Barnhart*, 421 F.3d 745, 749-50 (8th Cir. 2005).

The ALJ stated that Dr. Honghiran's opinion that Plaintiff was incapable of working was undermined by the specific findings in his MSS.  (Tr. 17.)  The ALJ noted, for instance, Dr. Honghiran's specific finding that Plaintiff was able to lift and carry fifty pounds occasionally and up to ten pounds frequently, which is inconsistent with total disability and instead "greatly exceed[s]" the exertional requirements of sedentary work and is consistent with the lifting capacity for light work as found by the state agency physicians.  *See* 20 C.F.R. §§ 416.967(a) (sedentary work involves lifting no more than ten pounds at a time), 416.967(b) (light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of up to ten pounds).  The ALJ also noted Dr. Honghiran's other specific

findings that Plaintiff could shop, ambulate without a cane or other assistive device, prepare a simple meal and feed himself, care for personal hygiene, and sort, handle and use paper/files.  (Tr. 204.)   The ALJ also discounted Dr. Honghiran's finding that he could "never" climb (Tr. 202), as inconsistent with the finding later in the MSS that he could climb a few steps with a single handrail (Tr. 204).  These type of internal inconsistencies provide a valid basis for affording discounted weight to Dr. Honghiran's opinions.

The ALJ also noted that Dr. Honghiran's finding that Plaintiff could only sit for four hours (Tr. 200) was "seemingly based only on the claimant's subjective complaints of pain" and was inconsistent with Dr. Pait's notes in the weeks after surgery that he was doing well and capable of performing "helping duties."  (Tr. 17.)  *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (ALJ is entitled to give an opinion less weight when it is based largely on the claimant's subjective complaints rather than on objective medical evidence).  The state agency medical consultants found that he should be able to sit for a total of six hours (with normal breaks) in an eight-hour day.  (Tr. 185.)   No other physician noted any difficulty in Plaintiff's ability to sit for any length of time or placed any restrictions on him in this regard.

As with Dr. Beavers' report, the ALJ also found that the discounted findings from Dr. Honghiran were inconsistent with Plaintiff's testimony that he engaged in yard work in January 2009 and acted as his wife's caregiver.  (Tr. 17-18.)  Although the yard work did appear to lead to back pain for which Plaintiff visited the emergency room, it is undisputed that he cared for his bedridden wife on a daily basis with some help from others, including cooking for her, taking her to the doctor, and helping her stand.  (Tr. 88-89, 239-41.)  The record also showed that Plaintiff reported engaging in other activities incompatible with total

disability, including driving alone, preparing daily meals, shopping, taking care of a pet, regularly attending church, and going to visit friends two to three times a week.  (Tr. 89-92.)

In any event, the ALJ stated that he was taking into account many of the limitations assessed by Dr. Honghiran.  (Tr. 17-18.)  Restricting him to sedentary work was consistent with Dr. Honghiran's finding that Plaintiff could stand and walk for two hours, and could only occasionally balance, stoop, kneel, crouch and crawl.  The ALJ properly evaluated Dr. Honghiran's opinion and did not err in declining to give more weight to the cited findings regarding the extent and impact of Plaintiff's impairments.

4.     State Agency Medical Consultants.

Plaintiff contends that the ALJ improperly "adopted ... verbatim" the RFC checklist prepared by the non-examining medical consultants, Dr. Takach and Dr. Jerry Thomas. This is incorrect, as the state agency consultants expressed the opinion that Plaintiff could perform work within the light exertional level, while the ALJ restricted him to sedentary work.  Moreover, the regulations recognize that state agency medical consultants and program physicians are "highly qualified physicians ... and other medical specialists who are also experts in Social Security disability evaluation" and that, as such, "administrative law judges *must* consider" their opinions.   20 C.F.R. §§ 416.913(c), 416.927(f)(2)(I) (emphasis added).  Nevertheless, "the opinions of non-examining sources are generally, but not always, given less weight than those of examining sources."  *Willcockson v. Astrue*, 540 F.3d 878, 880 (8th Cir. 2008); *see* 20 C.F.R. § 416.927(d)(1).

The ALJ properly considered the state agency opinions by taking them into account in assessing RFC but generally deferring to the opinions of examining sources and other medical evidence in further restricting the RFC to sedentary work.

B.    Credibility.

Plaintiff also contends that the ALJ's credibility finding, a critical element of the RFC determination, is not supported by substantial evidence.   He asserts that the ALJ improperly discounted his subjective allegations of disabling pain and functional limitations, which were supported by medical evidence that he sought repeated treatment for his pain and was repeatedly prescribed anti-inflammatory and narcotic pain medication, and that no medical personnel ever suggested that he was exaggerating his symptoms or that they did not warrant treatment.

A claimant's subjective complaints may be discounted if they are inconsistent with the record as a whole. *Halverson*, 600 F.3d at 932.  The ALJ is in the best position to gauge credibility and is granted deference in that regard if his findings are adequately explained and supported.  *Steed v. Astrue*, 524 F.3d 872, 876 (8th Cir. 2008).  *See* 20 C.F.R. § 416.929(c) (listing factors to consider);[2] *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984); SSR 96-7p, 1996 WL 374186, at *3, *5 (July 2, 1996). However, an ALJ need only acknowledge and consider these factors, and need not explicitly discuss each one. *Halverson*, 600 F.3d at 932.  Nor is an ALJ required to discuss all of the evidence

_____

[2]As stated in this regulation, the ALJ is required to consider, in addition to the objective medical evidence and the claimant's prior work record, statements and observations made by the claimant, his or her medical providers and any others regarding (1) the claimant's daily activities, (2) the location, duration, frequency and intensity of pain or other symptoms, (3) precipitating and aggravating factors, (4) type, dosage, effectiveness and side effects of medications, (5) non-medication treatments or other measures taken to alleviate pain and symptoms, and (6) functional limitations.

submitted, and his failure to cite specific evidence does not mean that it was not considered. *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000).

Here, the ALJ stated that he had considered Plaintiff's statements about his symptoms in light of the objective medical evidence and other evidence, and in accordance with the applicable rules and regulations, citing § 416.929 and SSR 96-7p. He found that, while Plaintiff's impairments reasonably could be expected to cause pain and other functional limitations, his statements concerning the intensity, persistence and limiting effects were "not credible to the extent they are inconsistent" with the RFC assessment. (Tr. 16.) The ALJ's ensuing discussion (Tr. 16-18) identified specific medical evidence that was inconsistent with disabling pain and limitations, and was instead compatible with the ability to perform sedentary-level work activities, including:

• Dr. Pait's report one month after back surgery that Plaintiff was neurologically stable and "doing fine." (Tr. 136.)

• Plaintiff's report one week later that he was working and lifting barrels despite Dr. Pait's instruction to not engage in arduous tasks. (Tr. 131.)

• Plaintiff's report about four months after surgery that he had returned to work doing carpentry and "helping duties" and was doing well; Dr. Pait's documentation on that date of normal muscle strength and an excellent toe-heel walk, and his advice to Plaintiff that he could return to work activities as long as he avoided heavy lifting. (Tr. 126.)

• Dr. Honghiran's July 2008 examination revealing Plaintiff's condition was "stable." (Tr. 197.)

• Dr. Honghiran's finding that Plaintiff could lift/carry up to fifty pounds occasionally and up to ten pounds frequently, stand/walk up to two hours, climb a few steps with a hand rail, shop, ambulate without a cane, prepare simple meals, care for personal hygiene, and sort and handle paper/files. (Tr. 199-200, 204.)

• The state agency medical consultant's opinion that Plaintiff could perform work at the light exertional level. (Tr. 191.)

14

- Plaintiff's own description of his activities, including engaging in yard work and daily caring for his bedridden wife. (Tr. 88, 239-41.)

These are valid reasons for discounting the credibility of Plaintiff's subjective allegations regarding the extent and duration of his pain and limitations. *See Brown*, 611 F.3d at 955 (daily activities which are inconsistent with a claimant's assertion of disability reflect negatively upon credibility); *Juszczyk v. Astrue*, 542 F.3d 626, 631-32 (8th Cir. 2008) (adverse credibility determination supported by lack of objective medical and clinical evidence to support alleged depth and severity of physical impairments).

Plaintiff is correct that the ALJ did not explicitly discuss Plaintiff's medications and alleged side effects. He points to his hearing testimony that some of his pain medications made it hard for him to stay focused, concentrate, and keep track of a conversation (Tr. 234-35), pharmacy and other medical records showing that his physicians continued to prescribe pain medications from the time of his surgery in October 2007 through January 2009 (Tr. 214-15, 222-23),[3] and an agency interviewer's comment that Plaintiff appeared to be "so drugged that he couldn't remember dates" (Tr. 69).

As stated, the ALJ is not required to discuss each credibility factor and his failure to cite this particular evidence does not mean he did not consider it. The ALJ repeatedly stated that he reached his decision after "careful consideration" of "all the evidence," the "entire record," and the "record as a whole" (Tr. 13, 15, 16, 18), and he expressly stated that he made his credibility determination after considering the requirements of § 416.929, SSR 96-7p, and "the entire case record" (Tr. 16). Medications and side effects are factors

---

[3]Plaintiff summarized his medication usage in his reply brief (doc. 19, at 5-8).

listed in § 416.929(c)(3)(iv) and SSR 96-7, *supra* at *3, *7.  The ALJ obviously was aware of Plaintiff's hearing testimony, as well as the pharmacy and agency records.

The record contains other evidence that indicates Plaintiff's medications were effectively controlling his pain without debilitating side effects.  Early in the benefits application process, he completed a form stating that, on a scale of one to ten, his pain was a four "most of the time," and that "sometimes" his medications made him drowsy.  (Tr. 96-97.)  In January 2008, Plaintiff reported to Dr. Pait that he was taking pain medications and baby aspirin daily and had constant dull pain, with a pain scale rating of four, which became sharp on standing.  (Tr. 123.)  He testified at the hearing in January 2009 that his medications controlled his pain "to where [he could] live with it."  (Tr. 235.)  In two separate forms completed during the benefits application process, he wrote "none" when asked for the side effects of his medications (listed as Oxycodone, Darvocet, Diazepam, Tylenol and aspirin).  (Tr. 83 [01/23/08],[4] 106 [03/13/08].)  He reported in December 2008 that he enjoyed reading, could pay attention "all the time," could finish tasks that he started, and could follow written and spoken instructions.  (Tr. 92-93.)  The agency interview to which Plaintiff refers was on October 18, 2007, during his recovery period just sixteen days after undergoing major back surgery.  (Tr. 69-70.)  Furthermore, as the Commissioner points out, Plaintiff's treatment records do not reflect that he ever complained to his medical providers about any continuing side effects of his medications.  *See Moore v. Astrue*, 572 F.3d 520, 524-25 (8th Cir. 2009) (claimant's ability to manage back and knee pain through medication is inconsistent with alleged disabling level of pain)*; Van Vickle*, 539 F.3d at 829-

---

[4]Although Plaintiff wrote the date as 1-23-07 on this form (Tr. 85), this cannot be correct. Plaintiff's DIB application was dated October 18, 2007 (Tr. 57).

30 (claimant's testimony of significant side effects from medication was contradicted by doctor's treatment notes and other evidence); *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) (evidence of effective medication resulting in relief diminishes credibility of claimant's subjective complaints); *Ownbey v. Shalala*, 5 F.3d 342, 345 (8th Cir. 1993) (ALJ did not err in discrediting claimant's testimony that her medication caused dizziness and drowsiness where the record contained no complaints of side effects to her physicians).

Plaintiff also contends that the authenticity of his pain is supported by notes in the medical records regarding pain management. The first reference was from the attending surgeon the day of his surgery, October 2, 2007, referring to the "need for postoperative pain management." (Tr. 151.) The second reference was about three weeks later, on October 25, when his family physician stated that Plaintiff "may well need chronic pain management" and that an appointment was being set up with a pain specialist. (Tr. 207.) Both of these comments were shortly after surgery, when there certainly was a need for pain management, and do not support the need for aggressive, long-term pain control. Furthermore, there is no evidence that Plaintiff kept the appointment with the pain specialist, indicating that such extended treatment was not necessary.

Under these circumstances, Plaintiff's arguments do not provide a basis for reversal or remand.

V.

Plaintiff argues that the ALJ failed to evaluate relevant evidence prior to concluding that his impairment did not equal the criteria of Listing 1.04 (Disorders of the Spine) at step three of the sequential evaluation.

If a severe impairment is of the degree set forth in a listing and meets the twelve-month durational requirement, the claimant is conclusively presumed to be disabled. *Karlix v. Barnhart*, 457 F.3d 742, 746 (8th Cir. 2006). The claimant has the burden of showing that his impairment meets all of the listing's specified criteria. *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004).  An impairment that manifests only some of the listing criteria, no matter how severely, does not qualify. *Id.* (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)).

Listing 1.04A requires evidence "of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss **and**, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04A.  Regardless of whether the other criteria are met, the medical evidence does not show that Plaintiff experienced motor loss accompanied by sensory or reflex loss for the requisite twelve-month period, as required by the listing.  Dr. Pait's last motor examination in January 2008  revealed normal tone and muscle mass, as well as normal strength, grossly intact sensory, positive reflexes and excellent toe-heel walk with no evidence of ataxia, weakness or spasticity.  (Tr. 126.)  Dr. Honghiran's examination in July 2008 similarly revealed that Plaintiff was neurologically intact with no loss of muscle function.  (Tr. 197.)

18

Plaintiff asserts that, to properly make his step-three determination, the ALJ should have elicited the opinion of a medical consultant concerning Plaintiff's ability to perform a straight-leg raising test.  As Plaintiff did not meet all other requirements of Listing 1.04A, the ALJ was not required to further develop the record in this regard.

VI.

In his reply brief (doc. 19, at 14), Plaintiff asserts that the vocational expert's testimony could not constitute substantial evidence to support the Commissioner's findings at step five of the sequential evaluation because it was based upon a hypothetical question that did not include all of Plaintiff's impairments, *i.e.,* his pain and the side effects from his medications.

The Commissioner can utilize the testimony of a vocational expert to satisfy his burden of showing that jobs exist in significant numbers which a person with the claimant's RFC and vocational factors can perform.  20 C.F.R. §§ 416.960(c)(2), 416.966(e).  Such testimony constitutes substantial evidence only when "based on a correctly phrased hypothetical question that captures the concrete consequences of a claimant's deficiencies."  *Robson v. Astrue*, 526 F.3d 389, 392 (8th Cir. 2008).  Discredited complaints of pain are properly excluded from a hypothetical so long as the ALJ had reason to discredit them.  *Guilliams*, 393 F.3d at 804; *see Heino*, 578 F.3d at 882 (hypothetical "need not include allegations that the ALJ found not credible").

Because, as explained above, the ALJ properly discounted Plaintiff's subjective allegations, he did not err in posing a hypothetical which did not include discredited allegations of disabling pain and debilitating side effects.  Moreover, the ALJ acknowledged

and accounted for some degree of pain and functional restrictions by limiting the RFC to sedentary work.

VII.

After a careful review of the evidence and all arguments presented, the Court finds that Plaintiff's arguments for reversal are without merit and that the record as a whole contains substantial evidence upon which the ALJ could rely in reaching his decision.

ACCORDINGLY, the final decision of the Commissioner is **affirmed** and Plaintiff's case is **dismissed** with prejudice.

IT IS SO ORDERED this 25th day of March, 2011.

_____
UNITED STATES MAGISTRATE JUDGE